# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1426 | **DATE** | 4/25/2002 |
| **CASE TITLE** | Roberta Lopez vs. Larry G. Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Claimant's Motion to Alter or Amend Judgement

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Claimant's motion to alter or amend the court's memorandum opinion and order issued April 8, 2002, is granted in part and denied in part. An amended memorandum opinion and order will be issued on this date reflecting the following change: the word "exceed" on the second page has been changed to "equal."

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 29 2002 | 17 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| MG | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERTA LOPEZ, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) No. 01 C 1426 ) ) Judge Robert W. Gettleman |
| LARRY G. MASSANARI, Acting Commissioner of the Social Security Administration, | ) ) ) |
|     Defendant. | ) ) |

**DOCKETED**
APR 29 2002

## **AMENDED MEMORANDUM OPINION AND ORDER**

Claimant Roberta Lopez seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner" and the "SSA," respectively) denying her application for Social Security benefits, pursuant to 42 U.S.C. §§405(g) and 1383(c)(1)(B)(3).[1] In cross-motions for summary judgment, claimant asks that the court vacate the ALJ's denial of benefits or reverse the appeals council's denial of review, and the Commissioner asks that the court affirm both of those decisions. For the reasons set forth below, the court denies claimant's motion and grants the Commissioner's motion.

### **THE ALJ'S DECISION**[2]

Social Security regulations required the ALJ to conduct a five-step test to determine whether claimant is disabled. 20 C.F.R. §404.1520. This five-step inquiry is as follows: (1) Is claimant

---

[1] Administrative Law Judge Michael R. McGuire ("the ALJ") denied claimant's request for Social Security benefits. The SSA Appeals Council ("the appeals council") denied claimant's request for a review of that decision, making it the final decision of the Commissioner of Social Security. See 20 CFR §416.1481; Herron v. Shalala, 19 F.3d 329, 332 (7th Cir. 1994).

[2] Because claimant takes issue with one portion of the ALJ's decision only, the court will set forth that portion below and then discuss the facts relevant thereto in the discussion section of this Order.

17

currently participating in substantial gainful activity? (If so, the claim is disallowed); (2) Is claimant's impairment severe? (If not, the claim is disallowed); (3) Does claimant's impairment meet or equal one of a list of specific impairments? (If so, claimant is automatically disabled); (4) Is claimant able to perform her past relevant work? (If so, the claim is denied); and, (5) Is claimant able to perform any other work in the national economy? (If not, claimant is disabled). See id.; Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993). At the fifth step, the SSA has the burden of proof, and claimant's physical impairments, age, education, and work experience are taken into consideration. See Paige v. Bowen, 695 F. Supp. 975, 977-78 (N.D.Ill.1988).

In the instant case, the ALJ found, and claimant does not contest, that she was not participating in substantial gainful activity, that her impairment, which he describes as "carpal tunnel syndrom, left, status post failed release," is severe, and that her impairment does not meet or exceed one on the list of specific impairments. Thus, at its broadest, the dispute in the instant appeal centers around the ALJ's decision that claimant is not disabled because she has the residual functional capacity to perform unskilled work at the light exertional level.

To reach this conclusion, the ALJ reviewed claimant's medical records, her testimony at trial, and her work history to conclude that claimant "can lift and carry 10 to 20 pounds," that there is "no limitation in her ability to sit, stand and walk, and that she can pull up to 10 pounds with her upper extremities," despite also finding that claimant has "no functional use of her non-dominant left hand." The ALJ's decision reflects that, upon reaching these findings, he questioned Vocational Expert Cheryl Hoiseth ("the VE") as to whether a hypothetical individual with the above restrictions and claimant's past work experience is able to perform any jobs in the national economy. As the ALJ's decision explains, the VE "identified jobs at the light exertional level," specifically the job

of "machine tender," which the VE described as "unskilled work" involving "simple repetitive duties."

The ALJ did note, however, that, "In response to an attorney hypo [posed by claimant's counsel] which added to mine that the claimant would not have use of the right hand once every three weeks, the [VE] responded that there would be no jobs which the claimant could perform." This hypothetical and the VE's testimony in response were disregarded by the ALJ, however, because he found claimant's testimony regarding her right hand "not fully credible" and, based on that finding, concluded that claimant's right hand is her dominant hand, and that "there is no medical evidence [that claimant has] a right hand problem." These conclusions made claimant's alternative hypothetical inapplicable and allowed the ALJ to find:

> Therefore, using Medical-Vocational Rule 202.18 as a framework, as supplemented by the testimony of the [VE], a conclusion is warranted that there remain a significant number of jobs in the economy which the claimant can perform. Accordingly, the claimant has not been under a disability for purposes of Title II of the Social Security Act at any time since the alleged onset date.

Thus, the narrow dispute between the parties in the instant appeal centers around the ALJ's conclusion that claimant has sufficient use of her right hand and is not otherwise prevented from fulfilling the duties of a machine tender.

## STANDARD OF REVIEW

The question before the court is not whether claimant is actually disabled, but rather whether substantial evidence supports the ALJ's conclusion that claimant is not disabled. See Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987); Pope, 998 F.2d at 480; Wolfe v. Shalala, 997 F.2d 321, 322 (7th Cir.1993). "Substantial evidence," means evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). In making

3

this determination, the court reviews the entire record but refrains from deciding the facts anew, weighing the evidence again, or substituting its own judgment for that of the Commissioner. See Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1985). Further, with respect to the ALJ's credibility determination, the court usually will not upset that determination so long as there is some support for it in the record and it is not patently wrong. Herron v. Shalala, 19 F.3d 329, 335 (7th Cir. 1994) (citing Wolfe, 997 F.2d at 326; Edwards v. Sullivan, 985 F.2d 334, 338 (7th Cir. 1993)).

## DISCUSSION

Claimant asks the court to vacate the ALJ's denial of benefits, or to reverse the appeals council's denial of review. With respect to the former request, claimant argues that the SSA did not meet its burden of showing that claimant can perform other work in the national economy despite her impairment. With respect to the latter request, claimant argues that the appeals council made a mistake of law in finding the new evidence submitted by claimant immaterial. The court will address each of claimant's arguments in turn.

### A. DID THE SSA MEET ITS BURDEN OF PROOF?

Claimant makes several arguments in support of her assertion that the SSA did not meet its burden of proof. Claimant's first argues that the ALJ erred in discounting claimant's credibility as a witness based on her inability to answer definitively when he asked her which hand was her dominant hand. According to claimant, under Social Security Ruling ("SSR") 96-7, "this factor is not a legitimate basis on which to rest a credibility determination as to [claimant's] testimony as a whole."

The testimonial exchange in question between claimant and the ALJ went as follows:

Q by ALJ: Are you right- or left-handed?

4

| | |
|---|---|
| A by Claimant: | That's a problem we have. I'm more on the left than what I am right. I write with my right hand, but I do more things with my left hand. I don't know how. Everybody gets confused on this. I pick up things with my left hand. I'll hand you things with my left hand. I eat and I write with my right hand. So I don't know what you call that. |
| Q by ALJ: | If somebody threw a ball at you, which hand would you catch it in? |
| A by Claimant: | Left hand. |

Prior to making his credibility determination, the ALJ noted that claimant told Dr. Yatin M. Shah, a consultant for the Social Security Adminstration, "that she was right[-]handed and had no difficulty writing or using the right hand for day to day activities." The ALJ then explained:

> Consideration of the factors described in 20 CFR 404.1529(c)(3) and [SSR] 96-7p lead to my conclusion that the claimant was not fully credible. She said that she did not know which hand was her dominant hand. She said she ate and wrote with her right hand, but did other things with her left. For instance, she would catch a ball thrown to her with her left hand. I find she is right hand dominant as this is the hand with which she eats and writes and she so identified it [during her examination by Dr. Shah].

Similarly, in the "Findings" section of his decision, the ALJ notes that "claimant's allegations of disabling symptoms and limitations are not considered fully credible."

The court concludes that the ALJ's credibility determination in the instant case is proper under SSR 96-7p. As the Seventh Circuit explained in Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001):

> Under [SSR] 96-7p, the ALJ's determination or decision regarding claimant credibility 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.' In this regard it is

5

> not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' Id. It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.

The ALJ's credibility determination in the instant case meets these standards; it contains with sufficient specificity the ALJ's reasons for discounting claimant's credibility (that she testified equivocally and had previously identified herself to a doctor as being right-handed), and it identifies the effect of that credibility determination (that he found claimant to be right-handed and that he also discounted her allegations of disabling symptoms and limitations generally).

In addition, the court's review of the record in the instant case indicates that the record supports the ALJ's conclusion, making that conclusion not patently wrong. See Herron, 19 F.3d at 335. As explained above, Dr. Shah's report states that claimant told him that she is right-handed, and that she was able to use her hand to write and for other daily activities without difficulty. Another report prepared by Dr. Myla C. Bacalla and titled "case analysis" also indicates that claimant is right-handed. Further, the record indicates that in 1998 claimant filled out an "Activities of Daily Living Questionnaire" for the SSA and, in response to the question, "Describe any changes in your ability to cook, shop, or perform household chores since your condition began," claimant wrote, "I mostly use right hand—not both." On another form, this one called a "Pain Questionnaire," claimant was asked to describe her daily activities and, after doing so, she wrote, "I don't depend on the left hand at all—mostly I depend on [my] right hand to accomplish my chores." Further, a record documenting claimant's "hand therapy" from February to April 1997, states that her right hand is "dominant." And, finally, an even earlier therapy record, dated April 24, 1995, describes claimant as right-handed.

6

Claimant argues that this latter-most record contradicts the ALJ's finding because after indicating that claimant is right handed, a notation is made that she "uses L[eft] Hand more." Claimant also relies on a letter written to Dr. Ajmere by a Dr. Ram Pankaj on January 11, 1999, which describes her left hand as being "a dominant hand." The court finds these notations insufficient to overturn the ALJ's credibility determination, however, because they are contradicted by the greater weight of the evidence (which indicates that claimant's right hand is her dominant hand) and, at any rate, they do not show that the ALJ's determination was patently wrong. Thus, based on all of the above, the court upholds the ALJ's credibility determination.

Claimant next argues that the ALJ should not have disregarded her testimony that she is sometimes unable to concentrate due to the pain that accompanies her impairment. The text of the ALJ's decision contradicts this argument, however; the ALJ's decision indicates that he did consider claimant's difficulty concentrating when reaching his conclusion that she is able to perform work in the national economy. Following his discussion of claimant's use of over-the-counter pain medications, the ALJ noted that claimant testified that "the pain causes some trouble concentrating." Then, after concluding that claimant's residual functional capacity allows her to be a machine tender, the ALJ added that, "The vocational expert described this as unskilled work which meant simple repetitive duties which addresses the claimant's allegations of reduced concentration." Thus, the court concludes that the ALJ did factor into his analysis claimant's difficulty concentrating.

Claimant next argues that the ALJ erred by not considering her claim that she suffers from periodic swelling and pain in her right hand which renders it unusable approximately one day every three weeks. Once again, however, the court finds that the ALJ did consider

7

claimant's testimony regarding her right hand; he simply discounted that testimony given his finding that her testimony was not fully credible. In summarizing claimant's testimony, the ALJ wrote that, "Every three weeks [claimant's] right hand swells and her right wrist is painful. It lasts all day." Then, while also discussing claimant's extensive history of medical problems with her left hand, the ALJ noted that, "claimant told [Dr. Shah] she was right handed and had no difficulty writing or using the right hand for day to day activities," and that, upon examination, claimant's right hand grip strength was "normal." The ALJ also wrote that according to Dr. Bacalla, claimant was diagnosed as having bilateral carpal tunnel syndrome and "[t]here [were] no significant problems with [her] right hand." Further, the ALJ noted, claimant's May 1998 examination showed no anatomic abnormalities in either of claimant's hands. Upon reciting these facts, the ALJ concluded:

> I find there is no medical evidence of a right hand problem. Exhibit 18-F records complaints of [right hand] pain and says [claimant] wears carpal tunnel syndrome splints at night . . . . However, an MRI and an EMG show mild carpal tunnel syndrome on the left [hand] and don't mention [claimant's] right wrist.

Thus, the ALJ's decision indicates that while he did take into consideration plaintiff's testimony regarding her problems with her right hand, he discounted that testimony as incredible based on the lack of medical evidence to support it.

Claimant argues that, contrary to the ALJ's assertion, there is medical evidence showing that she had problems with her right hand. Specifically, claimant notes that her physical therapy record dated February 24, 1997, states that "[claimant] reports having symptoms of CT in bilateral hands for [approximately] 1 year," and that Dr. Kishor Ajmere's notes from August 26, 1998, indicate that claimant reported "pain in [her right] wrist [and] hand," while another of his

8

notes from January 7, 1999, indicates that claimant was experiencing "pain [in] both wrists." Claimant also points out that her doctor gave her a splint for her right hand in addition to her left hand. Further, claimant notes, several doctors, including Dr. Bacalla and Dr. Mukun Komanduri, referred to her as having "bilateral carpal tunnel syndrome." Claimant also emphasizes that during one of her interviews at the district SSA office, SSA personnel observed that claimant "held her hands in an awkward position and they appeared to be swollen." Claimant also notes that the case analysis performed by a physician employed by the SSA concluded that claimant has bilateral carpal tunnel syndrome, and that the ALJ noted as much in his decision denying her request for benefits. Finally, claimant argues that in reaching his decision, the ALJ should not have placed importance on the fact that the MRI and EMG tests she underwent made no mention of her right hand. The EMG, claimant argues, was performed on her left hand only, and the MRI report does not indicate whether that test was performed on claimant's right hand.

Claimant's arguments are well-taken, but upon close examination, they carry little weight. First, complaints by claimant to a doctor that are recorded in a medical record are not equivalent to medical evidence that she in fact has a problem with her right hand. Further, that doctors and the ALJ describe claimant as having bilateral carpal tunnel syndrome is not itself evidence that she had right hand problems that were actually debilitating; as claimant's own case shows, carpal tunnel syndrome can result in varying degrees of debilitation from one hand to another. With respect to claimant's assertion that the ALJ should not have relied on her MRI and EMG tests because those tests may not have been performed on her right hand, assuming claimant is correct and tests were not performed on her right hand, that fact is itself telling; that her doctors found no need to investigate problems with claimant's right hand suggests that she did not suffer from

9

debilitating right hand problems. This leaves claimant's own complaints about pain and swelling in her right hand and the observation of one SSA employee—who is apparently an administrator, not a doctor—that claimant's hands appeared to be swollen. These assertions are not equivalent to medical evidence, however, and accordingly they do not contradict the ALJ's conclusion that no such evidence existed showing that claimant has a right hand problem.

Indeed, the vast majority of the medical evidence—at least 98 percent by the court's estimate—in the record in the instant case involves claimant's problems with her left hand. Tellingly, claimant's own counsel summarized her disability claim for the ALJ in his opening statement without relying on any claimed medical problems[3] with claimant's right hand. Claimant's counsel concluded:

> So this isn't simply a, a matter of loss of use on the left side. It's not like a one-armed case, I would contend. It's—it goes beyond that. It's a loss of use plus pain management type problem. And—because I know that [the VE] can—I'm sure can quote all kinds of jobs that a one-armed person could do if they didn't have a pain management problem combined with that, or at least I'm assuming she could. But I'm trying to say that this goes beyond that. And so it, it is the pain management problem that really is the —in, in addition to the loss of use on the left side[—]that is driving our theory here as far as an inability to do any substantial, gainful activity.

---

[3] Prior to summarizing claimant's theory of recovery, claimant's counsel does state that:

> It should be noted that [claimant] was originally told prior to her surgery that she had carpal tunnel bilaterally. In fact, the treating surgeon was going to—the original intent was after [performed surgery on] the left hand, he was going to go ahead and do the right hand. But so many problems occurred with the left hand that the—my client never consented to have the right hand done.

The medical records do not support the assertion that bilateral surgery was ever contemplated, however. In fact, the medical records do not indicate that surgery on claimant's right hand was ever needed or planned.

10

Similarly, in a form claimant submitted to the SSA on August 12, 1998, claimant described her limitations as a result of her condition as, "cannot bend [hand] at wrist[,] have trouble grasping items[,] swellage [sic] in hand[,] pain in hand"—referring to her left hand only. On the same form, claimant indicated that her illness or injury does not affect her ability to care for her personal needs and that she is, "unable to work due to swelling in left hand." To the extent claimant's testimony at trial indicated that she has problems with her right hand,[4] as explained above it is apparent that the ALJ placed little weight on that testimony as a result of his

---

[4] Claimant testified at the hearing as follows with respect to her right hand:

Q: How about your right arm and hand; do you have any trouble with that?
A. I have [swelling] a lot in the right hand. I have a lot of—
Q: Is that painful?
A: Yeah, the pain—I've got a lot of pain in my wrist, too. It's not that it's painful, it's just that you're so clumsy when your hands are so swollen. You are so clumsy. I have pain the hand too. But it's more the swell[ing] that I have trouble with, with the right hand.
Q: How often does the right hand swell in a week?
A. . . . Maybe about every three weeks with the right hand it'll start—it'll swell up on me.
Q: When that happens, does it limit how you use the right hand?
A: Yes. Yes.
Q: How does it limit it?
A: I can't pick up things.
Q: Okay. What do you do then? Then you're—
A: I've got to hope the left hand's going to let me do a little bit.
. . .
Q: How much weight can you lift with . . . your right [hand]?
A: I can hold a gallon of milk with the right hand.
Q: When your right hand swells, how long does that last?
A: It's not as long as the left hand. It might swell one day, and then that night when I use my braces, the next morning it is pretty well down. . . . It might swell up again that day. All depends on what I'm doing to make it swell up.

Claimant also testified that she is able to sweep and mop using mostly her right hand, she can scrub out sinks, she is able to do laundry and go grocery shopping (though some items are difficult for her to grasp), and she drives and cooks occasionally.

11

determination that claimant was not fully credible—a determination that the court has found to be supported by the evidence in the record and thus not patently wrong. Therefore, the court finds that the ALJ's conclusion that claimant is right-handed, and that she is not limited in her use of her right hand beyond being able to pull up to ten pounds with both arms, is supported by substantial evidence.

Claimant raises no other meaningful attacks on the bases of the ALJ's residual functional capacity finding. Thus, the court concludes that the hypothetical question posed by the ALJ accurately reflected claimant's impairments to the extent those impairments were supported by the medical evidence in the record. See Ehrhart v. Secretary, 969 F.2d 534, 538 (7th Cir. 1992) (explaining that "all that is required is that the hypothetical question be supported by the medical evidence in the record") (citing Meredith v. Bowen, 833 F.2d 650, 654 (7th Cir. 1987)); see also Cass v. Shalala, 8 F.3d 552, 555-56 (7th Cir. 1993). The VE testified in response to the ALJ's hypothetical question that a person with claimant's residual functional capacity is able to perform the job of machine tender and that there are approximately 1,500 such jobs within this region. Based on this, the court concludes that the SSA met its burden of proof in establishing that claimant has the residual functional capacity to perform work in the national economy.

## B. DID THE APPEALS COUNCIL ERR IN FAILING TO REVIEW?

The second question posed by claimant's appeal is whether the appeals council erred in failing to review the ALJ's decision based on the new evidence furnished to it by claimant. As explained in 20 C.F.R. §404.970(b), the appeals counsel was to "evaluate the entire record including the new and material evidence submitted" once it found that claimant's new evidence related to the period on or before the date of the ALJ's decision. If the appeals council found the

ALJ's "action, findings, or conclusion" to be "contrary to the weight of the evidence ... of record" at the time, the appeals council was then to review the ALJ's decision. 20 C.F.R. §404.970(b). The appeals council cited the above rule in its formal decision, noted that it had "considered the contentions raised in [claimant's counsel's] letter dated October 9, 2000, as well as the additional evidence [submitted by claimant]," but nonetheless decided not to conduct a review of the ALJ's decision because its inquiry produced no "basis for changing the [ALJ's] decision."

The decision of the appeals council was within its discretion, making this court's review of that decision limited. Eads v. Secretary of Health & Human Servs., 983 F.2d 815, 817 (7th Cir. 1993). This court can reverse the appeals council's decision only if it rests on a mistake of law. Id. One example of a mistake of law is if the appeals council incorrectly finds the newly submitted evidence to be "not material" to the ALJ's disability determination. See id. (citing Nelson v. Bowen, 855 F.2d 503, 506-08 (7th Cir. 1988), as an example where the Seventh Circuit found that the appeals council had incorrectly determined new evidence to be immaterial). Claimant argues that the appeals council erred by finding her new evidence immaterial to the ALJ's disability determination. New evidence is material if there is a reasonable possibility that it would have changed the outcome of the case. Id. at 506. Claimant argues that the new evidence she provided to the appeals counsel would have changed the outcome of the case had the ALJ known about it, and therefore this court should reverse the decision of the appeals council so that it may conduct a full review of the ALJ's

13

determination.[5]

The court disagrees with claimant's assertion that the appeals council made a mistake of law in ruling on her appeal. The appeals council did not find claimant's new evidence immaterial; the appeals council found that the evidence provided no basis for changing the ALJ's decision. Put another way, the appeals council considered claimant's new evidence along with the ALJ's decision as required and concluded that the ALJ's findings were not contrary to the weight of the evidence of record (which included the originally submitted evidence) pursuant to 20 C.F.R. §404.970(b). Further, even if the appeals council did find claimant's new evidence immaterial, this court does not find that conclusion to be a mistake of law because there is no

---

[5] The Commissioner argues that claimant is actually seeking a remand of the instant case to the ALJ for further consideration under the sixth sentence of 42 U.S.C. §405(g), which provides:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

Thus, according to the Commissioner, claimant is required to show good cause for her failure to incorporate the new evidence into the record at or before her hearing before the ALJ.
Claimant disputes the applicability of 42 U.S.C. §405(g) and maintains that she is seeking a reversal of the appeals council's decision under 20 C.F.R §404.970(b) instead. This dispute need not be resolved, however, because claimant cannot meet the standard for remand under 20 C.F.R. §404.970(b), which does not require claimant to show good cause for failing to incorporate her new evidence when this case was before the ALJ.

reasonable possibility that claimant's new evidence would have changed the outcome of the ALJ's ruling.

Claimant's new evidence consists of six pages of doctors' notes and reports which date from January 12, 1995 to July 10, 1997, documenting five doctor's appointments attended by claimant. The earliest record lists the results of an EMG test performed on both of claimant's hands. The report indicates that claimant complained of numbness in her right hand and that the test revealed that she had, "Mild right median neuropathy at the wrist (carpal tunnel syndrome)" and, "Mild right ulnar neuropathy around elbow." Based on this test, Dr. Komanduri's report dated February 14, 1996, assessed claimant as having "mild carpal tunnel syndrome" in her right hand, the symptoms of which he did not consider severe or requiring surgical treatment. Instead, he suggested that she wear "wrist cock up splints," take anti-inflammatories, and return for a follow-up appointment in six weeks. When claimant returned to Dr. Komanduri on April 10, 1996, he noted that claimant reported that her symptoms had minimally improved since she began wearing the splints at home and that, "For the most part she is unwilling to proceed with any further intervention." On June 25, 1997, claimant returned to Dr. Komanduri and wanted to discuss carpal tunnel release surgery for her right hand. Dr. Komanduri wrote, "I have told her that this is inappropriate at this time as she has not really been splinted or otherwise conservatively managed," and instead asked claimant to follow up with Dr. Cohen. Finally, on July 10, 1997, Dr. Cohen reported that claimant's right hand "has developed some early carpal tunnel symptomatology" and noted that Dr. Komanduri "gave her a splint last week and we are going to see how that goes over the next six weeks in an effort to try to relieve the other hand

15

without an operation."[6]

While somewhat supportive of claimant's attack on the ALJ's decision (discussed in detail above), this information does not demonstrate that the ALJ's "action, findings, or conclusion" were contrary to the weight of the evidence of record pursuant to 20 C.F.R. §404.970(b). Three of the five appointments documented in claimant's new records predate the disability onset date of January 30, 1997, that she identified to the SSA when she applied for benefits. It is also worth noting that these dates indicate that claimant worked full-time for two years after being first diagnosed with carpal tunnel syndrome. Claimant's new records also indicate that her problems with her right hand were never serious; although claimant asked her doctor about having carpal tunnel release surgery performed on her right hand, her doctor found that course of action premature and suggested instead that she simply wear a wrist splint on her right hand when she is at home. Further, when claimant's new evidence is considered with the evidence that was available to the ALJ, it is still clear that the vast majority of claimant's ongoing treatment was aimed at addressing the much more severe left hand problems she was experiencing. The medical records available to the ALJ post-date those newly submitted by claimant and show no indication that her right hand problems progressed beyond those originally diagnosed. Moreover, claimant's new evidence does not support her testimony during the hearing that her left hand is her dominant hand or that she is unable to use her right hand for approximately one day out of every three-week period due to swelling.

For all of these reasons, the court declines to reverse the decision of the appeals council in

---

[6] Based on the above records, it is unclear whether claimant received a right hand splint from Dr. Komanduri in February of 1996, or whether claimant was not given that splint until June of 1997.

16

the instant case. The appeals council did not make a mistake of law because it did not conclude that claimant's new evidence was immaterial, and, even if it did, there is no reasonable probability that claimant's new evidence would have changed the outcome of the ALJ's decision.

## CONCLUSION

The court concludes that the ALJ's decision is supported by substantial evidence. The court also concludes that the appeals court did not make a mistake of law requiring reversal as claimant asserts. Therefore, claimant's motion for summary judgment is denied and the Commissioner's motion is granted.

**ENTER:** **April 25, 2002**

_____
**Robert W. Gettleman**
**United States District Judge**